UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN SWAGER,

       Plaintiff,                                  Hon. Robert J. Jonker

v.                                                  Case No. 1:13-CV-544

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 43 years of age on her alleged disability onset date. (Tr. 143). She successfully completed high school and worked previously as a cashier, title clerk, receptionist, and insurance clerk. (Tr. 26). Plaintiff applied for benefits on October 28, 2010, alleging that she had been disabled since November 25, 2009, due to fibromyalgia, depression/bi-polar disorder, cerebral venous angioma, migraines, myofascial pain disorder, sleep apnea, connective tissue disorder, carpel tunnel syndrome, and obesity. (Tr. 143-49, 159).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 64-142). On February 15, 2012, Plaintiff appeared before ALJ Paul Jones with testimony being offered by Plaintiff and a vocational expert. (Tr. 32-63). In a written decision dated March 23, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 20-28). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2010. (Tr. 22). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

Psychiatric therapy treatment notes dated January 4, 2011 indicate that Plaintiff "does not report feeling well at all." (Tr. 252). Plaintiff reported that she "is emotional" and "continues

to be angry and agitated." (Tr. 252). Plaintiff's medication regimen was modified. (Tr. 252). Treatment notes dated September 12, 2011 indicate that Plaintiff "is feeling better." (Tr. 254).

On February 9, 2011, Plaintiff participated in a consultive examination conducted by Dr. Thomas Horner. (Tr. 223-27). Plaintiff reported that she was unable to work due to various physical ailments. (Tr. 223-24). Plaintiff also reported that she "is bored a lot" and "nothing gives her pleasure." (Tr. 224). A mental status examination revealed the following:

> A. Attitude/behavior:
>
> Ms. Swager demonstrated adequate contact with reality throughout this interview. Motor activity was within normal limits. No unusual behavior was evident. No evidence of separation anxiety was evident. She was relaxed and pleasant to interview. In general, by [history] and presentation, she came across as an individual with ordinary balances and fluctuations between independent and dependent dynamics, with no excesses in either direction. I neither observed nor suspected any tendencies to exaggerate or to minimize symptoms. Impulse control during this interview was adequate.
>
> B. Stream of mental activity:
>
> Ms. Swager was appropriately spontaneous throughout the interview. The quality of verbal expression was adequate, and certainly consistent with past education and experiences/upbringing. There were no clinically significant blockages of thought and her logicality was intact and appropriate. There was no significant pressure or slowing of speech. There was no vagueness of communication. Similarly, there was no significant circumstantiality or tangentially of communication. There was no evidence or interfering distractibility.

      C.      Mental trend/content of thought:

> No hallucinatory, delusional or persecutory ideation or activity was evident or reported. No peculiarly obsessive trends were evident. The claimant presented no evidence of feeling imbued with unusual powers, or of feeling controlled by others. Ideas of reference peculiar to psychotic dysfunction were not evident. No peculiarly somatizing complaints were evident.

| | |
|---|---|
| Feelings of worthlessness: | No |
| Suicidality: | None outside of occasional ideation consistent with depression |
| H[istory] of violence: | No |
| H[istory] of self cutting or other mutilation: | No |

(Tr. 225).

Plaintiff was diagnosed with depression and a history of temper dysregulation. (Tr. 226). Her GAF score was rated as 54.[1] (Tr. 227). The doctor concluded as follows:

> Ms. Swager's ability to relate to others, including coworkers, customers/clients, and supervisors has often been testy and crusty though essentially intact, sufficient to maintain employment. Her abilities to understand, remember and to carry out familiar tasks are essentially intact. Her ability to focus and sustain attention to relevant occupational tasks is similarly intact and operational. Ms. Swager's ability to withstand or otherwise cope with the stresses of ordinary occupational activity is reduced by her current physical health problems. Outside of the actual physical health conditions of which she complains, for which there is clinically observed and documented evidence, and which could well therefore interfere with

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 54 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

>    an overall ability to undertake or to sustain physical work activity, Ms. Swager would be able and reasonably motivated to engage in work activity.

(Tr. 227).

On February 10, 2011, Plaintiff participated in a consultive examination conducted by Dr. Walid Nader. (Tr. 228-29). Plaintiff reported that she was disabled due to various physical ailments. (Tr. 228). A neurological examination revealed the presence of venous angioma,[2] but otherwise there were "no focal deficits." (Tr. 229). The results of a musculoskeletal examination revealed that Plaintiff experienced fibromyalgia, but were otherwise unremarkable. (Tr. 229). An examination of Plaintiff's extremities revealed no abnormalities. (Tr. 229). With respect to Plaintiff's ability to sit, stand, and perform various other activities and maneuvers, the doctor reported that Plaintiff experienced no impairment. (Tr. 230).

On July 12, 2011, Plaintiff was examined by Dr. Justus Fiechtner. (Tr. 240-41). Plaintiff reported she was experiencing "moderate" myalgias and arthralgias which "occur intermittently." (Tr. 240). Plaintiff reported that she was exercising on a treadmill or elliptical device two to three times weekly. (Tr. 240). A musculoskeletal examination revealed the following:

>    MUSCULOSKELETAL - SYNOVITIS - no synovitis present in the upper extremities and no synovitis present in lower extremities. TENDERNESS - Elbow and Knee. SWELLING - Ankle and foot, no swelling in the upper extremities. JOINT STABILITY - No joint laxity observed. BACK - Pt has tenderness to palpation over the cervical spine, Pt has decreased ROM in the cervical spine, Pt has tenderness to palpation along the lumbar spine and Pt has decreased ROM in the lumbar spine. Pt has no tenderness to palpation along the

---

[2] A venous angioma is a "malformation of blood vessels" that exhibit "no symptoms" and are "generally considered to be benign (harmless)." *See* Developmental Venous Abnormalities, available at http://www.hopkinsmedicine.org/healthlibrary/conditions/nervous_system_disorders/developmental_venous_anomalies_134,73/ (last visited on April 10, 2014).

6

> thoracic spine. ROM - Pt has normal ROM in the upper extremities and Pt has normal ROM in the lower extremities. MUSCLE WEAKNESS - no muscle weakness present. TRANSITION MOVEMENTS - Patients transition movements are normal. Tender points - Patient has tender points throughout.

(Tr. 241). Plaintiff's medication regimen was modified. (Tr. 241).

On August 24, 2011, Plaintiff was examined by Dr. Fiechtner. (Tr. 247-48). A musculoskeletal examination revealed the following:

> MUSCULOSKELETAL: SYNOVITIS - no synovitis present in the upper extremities and no synovitis present in the lower extremities. TENDERNESS - Shoulder, no tenderness in lower extremities. SWELLING - no swelling in the upper extremities and no swelling in the lower extremities. JOINT STABILITY - No joint laxity observed. BACK - Normal ROM in cervical spine, Pt has no tenderness to palpation along the thoracic spine and ROM is normal in the lumbar spine. No tenderness to palpation along the cervical spine or tenderness to palpation along the lumbar spine. ROM - Pt has normal ROM in the upper extremities and Pt has normal ROM in the lower extremities. MUSCLE WEAKNESS - no muscle weakness present. TRANSITION MOVEMENTS - Patient's transition movements are normal.

(Tr. 247).

At the administrative hearing, Plaintiff testified that she stopped working because she "just couldn't get out of bed to go to work" and "when I did go to work, I was so stiff and sore by the time I came home, I couldn't function." (Tr. 47). Plaintiff reported, however, that her problems were "more mental." (Tr. 47). With respect to the time period prior to the expiration of her insured status, Plaintiff testified that she experienced migraine headaches, approximately twice a month, that lasted "usually anywhere from two to four days." (Tr. 48). Plaintiff reported that during this time period she experienced numbness in her hands which impaired her ability to grasp and/or hold onto things. (Tr. 49). Plaintiff reported that she was able to lift 10 to 15 pounds, sit for 30 minutes, stand

for 45 to 60 minutes, and walk "no more than half a block." (Tr. 49-50). Plaintiff reported that during this time period she would experience, on average, one day each week when she did not "seem to even care to get out of bed." (Tr. 53).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that as of the date Plaintiff's insured status expired, she suffered from: (1) fibromyalgia/myofascial pain syndrome/connective tissue disorder; (2) brain angioma; (3) partial seizure disorder; (4) migraine headaches; (5) carpal tunnel syndrome; (6) obesity; and (7) bi-polar disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-24).

The ALJ next determined that as of the date Plaintiff's insured status expired, she retained the capacity to perform light work subject to the following limitations: (1) she can only occasionally climb, balance, stoop, kneel crouch, or crawl; (2) she can frequently handle with her right hand; (3) she must avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards such as operational controls of moving machinery and unprotected heights; (4) she can perform simple, routine, and repetitive tasks; and (5) requires work with only occasional supervision and interaction with co-workers. (Tr. 24). The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.

The vocational expert testified that there existed in the lower peninsula of Michigan approximately 8,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 55-61). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Plaintiff argues that her physical and emotional impairments are far more serious and debilitating than recognized by the ALJ. The Court first notes the sheer paucity of medical evidence in this case. Plaintiff has submitted a mere 21 pages of medical records created prior to the expiration of her insured status. (Tr. 202-22). As for the period following the expiration of Plaintiff's insured status, the record is equally devoid of evidence, consisting of a mere 36 pages of

records. (Tr. 223-58). As for Plaintiff's allegations of physical and emotional impairment and limitation, the record simply fails to support the argument that Plaintiff is limited to a greater extent than recognized by the ALJ. Rather, the evidence reveals that Plaintiff's impairments and limitations are adequately accounted for by the ALJ's RFC determination. In sum, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

**II.     The ALJ Credibility Assessment is Supported by Substantial Evidence**

As noted above, Plaintiff testified at the administrative hearing that her various impairments imposed far greater limitations than recognized by the ALJ. The ALJ, however, discounted Plaintiff's subjective allegations. Plaintiff asserts that she is entitled to relief because the ALJ "inappropriately dismissed [her] pain."

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

>  alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative

law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Minor v. Commissioner of Social Security*, 2013 WL 264348 at *16 (6th Cir., Jan. 24, 2013). Furthermore, the ALJ must "consider all objective medical evidence in the record, including medical signs and laboratory findings, where such evidence is produced by acceptable medical sources." *Id.*

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ recognized, the record evidence simply fails to support Plaintiff's subjective allegations. As the ALJ stated:

> Clinicians observed claimant with a functional range of motion. Her neurological functions in terms of reflex activity and sensations were intact; her musculoskeletal and extremity reviews were commonly free of deformity, clubbing, cyanosis, edema, diminished pulsation or atrophic changes. The evidence does not fully support claimant's contentions as to the magnitude of her symptomatology and dysfunction. With regard to her emotional status the evidence in the record does not suggest or establish that claimant lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for vocational involvement that is simple, routine and somewhat isolated in nature, as provided for in the residual functional capacity adopted.

(Tr. 26).

As the ALJ's assessment enjoys ample support in the record, the Court finds that the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 14, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge